IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SOBIECH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. GAS & ELECTRIC, INC., i/t/d/b/a PENNSYLVANIA GAS & ELECTRIC; ENERGY SERVICES PROVIDERS, INC., i/t/d/b/a PENNSYLVANIA GAS & ELECTRIC; and PENNSYLVANIA GAS & ELECTRIC,<br><br>Defendants. | No: 2:14-CV-04464-GAM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### FIRST AMENDED CLASS ACTION COMPLAINT

**AND NOW,** Plaintiff Thomas Sobiech brings this action individually and on behalf of all others similarly situated (the Class), and alleges as and for their First Amended Class Action Complaint against Defendants U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric; Energy Services Providers, Inc., i/t/d/b/a Pennsylvania Gas & Electric; and Pennsylvania Gas & Electric, (hereafter "Defendants"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

### INTRODUCTION

1. This is a proposed class action brought by Plaintiff on behalf of himself and other like customers of Defendants. Defendants have and continue to promise customers competitive market-based rates and savings on their electric energy bills if they switch from their local utilities or other energy suppliers to Defendant Pennsylvania Gas & Electric (hereafter "PAG&E").

However, these promises are quickly broken.  After the initial "teaser" rate expires, Defendants routinely increase their customers' rates well above the market.  A customer may end up paying two to three times more for electricity than what he or she paid before converting to PAG&E.  Instead of benefitting from switching to PAG&E, a typical customer loses hundreds or even thousands of dollars per year.   Defendants' acts and omissions in connection with its energy supply activities constitute breach of contract and/or a breach of the covenant of good faith and fair dealing and warrant declaratory relief.

## PARTIES

2.	Plaintiff Thomas Sobiech is a resident of Jersey Shore, Lycoming County, Pennsylvania.

3.	Defendant U.S. Gas & Electric, Inc. is a Delaware Corporation with its principle place of business in Miramar, Florida.

4.	Defendant Energy Services Providers, Inc. is a New York Corporation with its principle place of business in Miramar, Florida.

5.	Defendant PAG&E, is a fictitious name with an office address of 4075 Linglestown Road #113, Harrisburg, PA 17112.  It is believed that Defendant PAG&E is the fictitious name under which Defendants U.S. Gas & Electric, Inc., and Energy Services Providers, Inc. operate as electric suppliers in Pennsylvania.  PAG&E is licensed as an electricity supplier in Pennsylvania with a license number of A-2009-2121686.  Upon information and belief, Defendants created PAG&E in 2009 and have regularly and systematically conducted business throughout this district.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs, and is a class action in which members of the putative Class are citizens of States different from Defendants.

7. Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants regularly transact and solicit business in this District.

**GENERAL FACTUAL BACKGROUND**

8. In the 1990s, in an effort to improve efficiency and foster competition, several states began experimenting with the deregulation of utilities, including electricity, provided to and made available for their citizens.

9. Under these states' deregulation laws, the supply portion of a consumer's electric bill is separated from the delivery portion. In theory, with the supply portion open to competition, customers can freely shop around for the best price for their energy, creating a market check on energy rates rather than a regulated tariff or rate structure. However, the system can only work when the promises energy providers make to the consuming public are truthful and honored.

10. Regrettably, state deregulation has created a cottage industry of energy "middleman" that have been the subject of various media investigative reports detailing the unsavory tactics many of these companies employ. See, e.g. "Electric Shadyland: How Power Companies Rip You off", MOTHER JONES (January/February 2014 issue) (located at http://www.motherjones.com/environment/2014/01/deregulation-energy-enron-company-electricity).

11.     In 1996, Pennsylvania joined those states that were experimenting with deregulation of energy supply.  Energy deregulation in Pennsylvania was to enable consumers to purchase their energy supply from an Energy Services Company (ESCO) of their choice.  Since deregulation, the utility company (the former monopoly) is no longer the only option for energy supply.  After deregulation, customers can purchase electricity from ESCOs while continuing to obtain delivery through their local public utilities.  By opening up the market to consumer choice among various ESCO "bidders", the Commonwealth intended for competition to drive down customer rates.

12.     Defendants' practices emerge from, and attempt to exploit, the deregulation of the electricity supply market in Pennsylvania.

13.     The scheme works as follows: Defendants offer a standard service contract to residents of Pennsylvania with an initial "teaser" rate that is then replaced by a variable rate which Defendants promise will be set by market conditions and factors and will be "competitively priced." However rather than provide "competitively priced" rates that are set by market conditions and factors in each subsequent month, Defendants switch customers to an exorbitant monthly rate far out of line with the competition or market factors.

14.     Defendants tell their customers that: "When customers participate in energy deregulation, they benefit from competitive pricing for energy related products and services;"[1] "Unlike your utility, energy suppliers have the ability to offer structured pricing plans *that are tailored to meet the expectations of your budget*.  Value-added offers, programs and incentives are also additional benefits of deregulation."[2]  (Emphasis added); and "When you are ready to gain control of your energy costs, we will work with your current provider to finalize the details of your

---

[1] http://www.usgande.com/markets/pennsylvania/EnergyChoice/Deregulation.aspx
[2] http://www.usgande.com/markets/pennsylvania/EnergyChoice/WhySwitch.aspx

enrollment with us to ensure a smooth and seamless transition."[3]  As can be seen in item number "3" in the image below, taken from Defendants' webpage, the clear implication is that Defendants are purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for their customers.[4]  Aside from these statements being completely false and purposefully misleading, the alleged value of these inducements is negligible, if nonexistent, when compared to the amounts by which Defendants overcharge their customers through their deceptive conduct and practices.



15.     Once a person signs up with Defendants, they receive Defendants' welcome package which includes a prefatory and explanatory cover letter along with two enclosures: "Terms and Conditions – Electricity – Purchase and Sale Agreement" and a rebate certificate.  *See* Exhibit A hereto.

16.     Continuing their unambiguous promises of competitive pricing, Defendants thank the customer "for enrolling in our competitive electricity supply program," and again state that "We are committed to helping you lower your total energy costs."  Indeed, Defendant assures the customer that as long as the customer is current in making payments, she will "receive our competitively priced variable rate." *Id.*

---

[3] http://www.usgande.com/markets/pennsylvania/EnergyChoice/WhySwitch.aspx
[4] http://www.usgande.com/markets/pennsylvania/EnergyChoice/WhySwitch.aspx

17. Accordingly, the Terms and Conditions make clear to the customer that Defendants are not an "electric distribution company" like the old monopolies; so the "Public Utility Commission does not regulate the price of energy or other charges found in this Agreement." Rather, as Defendant states, "PAG&E sets the generation charges and charges that you pay." *Id.*

18. Thus as relates to the cost of Defendant's electricity, the Terms and Conditions provide under the term for "Price" that, while the rate is variable, "your rate will reflect your cost of electricity, including energy, other *wholesale market services*, the associated transmission and distribution charges[5] and *other market-related factors* for your utilities transmission zone." *Id.*

19. As the rate is a variable rate, Defendants' customers are not told the actual rates that they will be charged after the initial monthly rate until they receive their bill and have utilized the energy for which they are being charged.

20. Notwithstanding the aforementioned promises, Defendants' rates (after the initial "teaser" rate) are not competitive with other suppliers, other wholesale market services, or in line with genuine market-related factors. Customers who switch to PAG&E can pay as much as up to almost four times the going rate in their area. Defendants' customers regularly complain that their rates far exceed that of any other supplier, that their rates have more than doubled after the first few months, and that they are often being overcharged by up to 300% or 400% as compared to remaining with their local utilities (the old monopolies).

21. Defendants knew (or but for their reckless indifference would have known) prior to agreeing to supply electricity to Plaintiff and other customers that they would be unable or unwilling to provide the savings and/or competitive rate that they agreed/promised to provide.

---

[5]  Transmission and distribution charges are not set by Defendants.

22.     Defendants knew (or but for their reckless indifference would have known) prior to agreeing to act as Plaintiff's and other customer's agent/power of attorney in acquiring sufficient energy supplies to meet Plaintiff's and other customer's needs in the energy supply market that Defendants would be incapable, unable or unwilling to timely, skillfully, knowledgeably, reliably and/or honestly make the necessary and/or appropriate energy purchases to provide the savings and/or competitive price that they contracted/promised to provide.

23.     It is clear that Plaintiff and other customers on the one hand and Defendants on the other did not deal with each other on equal terms due to Defendants' purported skill and experience in purchasing electric energy supplies timely, skillfully, knowledgably, reliably, honestly and efficiently in the open market and Plaintiff and other customers depended on and trusted Defendants to do so.

24.     By making promises it did not intend on honoring and engaging in unfair dealings, Defendants subvert the consumer-friendly purpose of the deregulation of utilities in Pennsylvania and prevent their customers from receiving the benefits they were promised by Defendants.  In reality, most customers would be far better off staying with their local utilities or another supplier rather than switching to PAG&E.

## PLAINTIFF'S ALLEGATIONS

25.     Based on Defendants' above representations and promises, Plaintiff's wife, Tina Sobiech, enrolled Plaintiff as a PAG&E customer in its "competitive electricity supply program" with an initial competitive rate of $0.07899 per kWh for the first month of service.  *See* Exhibit A

26.     The terms of service offered by Defendants to Plaintiff were its standard terms of service to its other customers in Pennsylvania, as set forth above.  *Id.*

27.     Plaintiff was timely in making his payments for the electricity he received from

Defendants.

28.     After the first month under the initial rate, Defendants effectively tripled the rate it charged Plaintiff.  For example, by February 2014, Defendants charged Plaintiff $0.2729 per kilowatt hour (Kwh) which was more than three times the rate of both the initial rate set by Defendants but also more than three times that of Plaintiff's local energy provider, PPL Electric Utilities (the old monopoly) which would have only charged him $0.0875 per kwh.

29.     As a result of Defendants' inability or unwillingness to provide Plaintiff with the competitive rates and/or savings they contracted/promised to provide, Plaintiff incurred significant overcharges for his electricity.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

**A.     Class Definition(s)**

31.     The (b)(2) Injunctive Relief Class consists of: All persons in the Commonwealth of Pennsylvania who contracted with Defendants to act as their electric supplier.

32.     Excluded from the Class(es) are: Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families and the presiding judge(s) in this case and his, her or their immediate family.

**B.     Numerosity**

33.     At this time, Plaintiff does not know the exact size of the Class; however, due to

the nature of the trade and commerce involved, Plaintiff believes that the Class members number in the thousands and are so numerous that joinder of all members is impracticable. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery.

    **C.    Commonality**

34.    There are questions of law or fact common to the class, including at least the following:

    a. What the rate term was with its contract with its customers for the supply of electric services;

    b. What the rate term was with its contract with its customers;

    c. Whether Defendants breached the rate term of its contract in setting the actual rate charged to its customers;

    d. Whether Defendants breached the covenant of good faith and fair dealing in making the promises it did regarding the promised rate;

    e. Whether Defendants breached the covenant of good faith and fair dealing in setting the actual rate charged; and

    f. Whether and the amount to which Plaintiff and other members of the Class have been damaged?

    **D.    Typicality**

35.    Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of all members of the class.

    **E.    Adequacy**

36.    Plaintiff is committed to pursuing this action and has retained competent counsel

experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class.

### F. The Prerequisites of Rule 23(b)(2) are Satisfied

37. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final injunctive and equitable relief appropriate with respect to the Class as a whole.

38. The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

39. Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

40. Defendants' systemic policies and practices make declaratory relief with respect to the class as a whole appropriate.

### G. The Prerequisites of Rule 23(b)(3) are Satisfied

41. This case satisfies the prerequisites of Fed.R.Civ.P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such

litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## CAUSES OF ACTION

## COUNT I

### (BREACH OF CONTRACT)

42. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

43. Defendants entered valid and enforceable agreements with Plaintiff and the Class Members, which included terms relating to the rate to be charged for the electricity sold by Defendants.

44. Defendant breached their agreements with Plaintiff and the Class Members by setting rates that were neither competitive in the market place not genuinely keyed to market factors.

45. Defendants' breach of their agreements caused harm to Plaintiff and the Class Members.

## COUNT II

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

46. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

47. Defendants created in Plaintiff and the Class Members the reasonable expectation

that Defendants would set rates that were competitive in the marketplace and were otherwise keyed to market factors.

48. Defendants were entrusted by Plaintiffs and the Class Members to purchase electricity at competitive rates in the wholesale marketplace and, in turn, resell electricity to them at competitive rates in the retail marketplace.

49. In violation of its duty to act in good faith under its agreement with the Plaintiff and the Class Members and by its course of unfair dealing with Plaintiff and the Class Members set forth above, Defendants caused Plaintiff and the Class Members harm.

## COUNT III

## (DECLARATORY RELIEF)

50. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

51. Defendants have acted in a uniform manner under the standard and common terms relating to the price of its electricity it has agreed to with Plaintiff and the Class Members.

52. Defendants have acted or refused to act on grounds that apply generally to the declaratory relief of Plaintiff and the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed.R.Civ.P. 23(b)(2).

53. Plaintiff and the Class Members seek a declaration of Defendants' obligations to them under the agreement regarding the pricing of its electricity.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

a) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

b) Designating Plaintiff as representative of the Class and his counsel as Class counsel;

c) Entering judgment In favor of Plaintiff and the Class and against Defendants;

d) Awarding Plaintiff and Class members their individual damages including interest thereon;

e) Issuing appropriate declaratory and injunctive relief to declare the rights of Plaintiff and the Class Members ; and

f) Granting such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues.

Dated: September 29, 2014

Respectfully Submitted,

**SEEGER WEISS LLP**

_____
Jonathan Shub, Esquire
Scott George, Esquire
1515 Market St., Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax: (215) 851-8029

Troy M. Frederick, Esquire
**Marcus & Mack, P.C.**
Identification No: 207461
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362

*Attorneys for Plaintiff*